ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT WORTH DIVISION

2007 JUN -5  AM 10: 16

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FRANCES CARTER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | **4-07CV-335- A** |
| PFIZER, INC., JACQUELINE GUERRERO, | § | CIVIL ACTION NO. _____ |
| BOB DAVIS, JEANNE L. JALUFKA, | § | |
| KYLE M. NELSON, JASON D. HAHN, | § | JURY REQUESTED |
| ROBERT G. VIAL, KATHRYN K. TRUITT, | § | |
| KARI A. McLUHAN, REYNALDO | § | *Pending Transfer to MDL-1699* |
| RIOJAS, FRANCISCO MEZA, JACK | § | *(In re Bextra and Celebrex Marketing,* |
| BARINEAU, ERICA ZEPLIN, DEBORAH | § | *Sales Practices and Prods. Liab. Litig.)* |
| QUINONES, W. LANCE GOODSON, | § | |
| KEELY RODRIGUEZ, LEAH SILVA, | § | |
| DANIEL PONCE, CELESTE ESCOBAR, | § | |
| JILL GUIDRY, DANIEL TOWNSEND, | § | |
| LYNSEY ADAME, and | § | |
| CLARENCE BROOKS, M.D., | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT PFIZER INC.'S NOTICE OF REMOVAL

TO:   The United States District Court for the Northern District of Texas, Fort Worth Division.

NOW COMES Defendant Pfizer Inc. (incorrectly named as "Pfizer, Inc." and hereinafter "Pfizer"), and files this Notice of Removal of said cause to the United States District Court for the Northern District of Texas, Fort Worth Division pursuant to 28 U.S.C. §§ 1332 and 1441.  In support thereof, Pfizer respectfully would show the Court as follows:

### I.

### Introduction

A.    **The Multi-District Litigation Proceedings**

This is a pharmaceutical product liability case in which Plaintiff contends she sustained injuries from Celebrex®, a prescription medication co-promoted and marketed at times by Pfizer.   The Judicial Panel on Multidistrict Litigation ("JPML") has consolidated pretrial

proceedings in personal injury actions relating to Celebrex® pursuant to 28 U.S.C. § 1407 and assigned the litigation to the Honorable Charles R. Breyer of the United States District Court for the Northern District of California (the "MDL Court"). *See In re Bextra & Celebrex Mktg., Sales Pracs. & Prods. Liab. Litig.*, 391 F. Supp. 2d 1377 (J.P.M.L. 2005). Because Plaintiff alleges personal injuries from Celebrex®, this case will be subject to transfer to that court as a "tag-along action." *See id.* at 1377, n.1; RULES 1.1 & 7.4(A) OF RULES FOR MULTIDISTRICT LITIGATION UNDER 28 U.S.C. § 1407, 1999 F.R.D. 425 (J.P.M.L. 2001). Consequently, once this case is docketed, Pfizer will file a Motion to Stay all proceedings in this Court pending MDL transfer. *See, e.g., McKelvy v. Wyeth*, No. 4:03-CV-632, 2003 WL 21750952 (N.D. Tex. July 8, 2003) (McBryde, J.) (holding stay of proceedings appropriate pending MDL transfer "in the interest of promoting judicial efficiency and avoiding inconsistent rulings on common legal issues").

**B.     Plaintiff's Lawsuit**

On April 9, 2007, Plaintiff Frances Carter filed this personal injury action against Pfizer in the 153rd Judicial District Court of Tarrant County, Texas, Cause No. 153-223442-07, alleging she sustained damages as a result of her use of Celebrex®. *See* PLAINTIFF'S ORIGINAL PETITION at 2 (Appendix to Notice of Removal ("App.") at 8). She filed a First Amended Petition that same day. *See* PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION ("PETITION") at 1 (App. at 26). Plaintiff contends that Pfizer, the manufacturer of Bextra®, is liable for her alleged injuries under theories of negligence, strict liability, breach of express and implied warranties, and fraud. *See generally* PETITION at 8-18 (App. at 33-43).

Plaintiff's lawsuit also names as defendants twenty-one (21) current or former Pfizer field representatives (often called "detailers") from around and outside the state, whom Plaintiff

alleges share her Texas citizenship.[1]  As Pfizer detailers, the named employees are responsible for making physicians aware of Pfizer's products, so that the doctors can consider whether to prescribe them for particular patients.  *See, e.g.,* DECLARATION OF JACQUELINE GUERRERO ("GUERRERO DECL.") ¶ 3 (App. at 103).  Plaintiff maintains that these individual employees "called on doctors and hospitals" and "were in a position to make representations about the risks associated with the use of Celebrex®," and then obliquely suggest – with no specific supporting factual allegations – that the detailers withheld relevant information regarding potential adverse health effects of Celebrex® from Plaintiff and her prescribing physician.  *See* PETITION at 6-7 (App. at 31-32).  The gravamen of Plaintiff's complaint against these employees, thus, is that they failed to warn of potential risks of Celebrex® and that the detailers' representations caused her doctor to prescribe her the drug.

Additionally, Plaintiff names as a defendant the physician who allegedly prescribed the Celebrex® in question, Dr. Clarence Brooks ("Dr. Brooks").  *Id.* at 7 (App. at 32).  She asserts Dr. Brooks is liable for her injuries under a medical negligence theory based on his prescription of Celebrex®.  *Id.* at 12-13.

Plaintiff and Pfizer are of diverse citizenship.  The individual Pfizer detailer employees and Dr. Brooks have been improperly joined[2] in an effort to obstruct Pfizer's statutory right to removal.  As the Eleventh Circuit Court of Appeals recently held, it has become a "common strategy" for plaintiffs in pharmaceutical product liability cases to name local defendants in an effort to defeat the diverse drug manufacturer's right to remove a case to federal court.  *See Legg*

---

[1] Two of the named detailers – Kari McLuhan and Jill Guidry – are not Texas citizens, but rather are citizens of Arizona and Louisiana, respectively.  *See* DECLARATION OF KARI A. MCLUHAN ("MCLUHAN DECL.") ¶ 3 (App. at 124); DECLARATION OF JILL GUIDRY ("GUIDRY DECL.") at ¶ 3 (App. at 156).

[2] Courts historically have called this the "fraudulent joinder" doctrine. However, in *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc), the Fifth Circuit Court of Appeals adopted the term "improper joinder" as being more consistent with the related statutory language. Pfizer, consequently, uses this phraseology in this Notice.

*v. Wyeth*, 428 F.3d 1317, 1320 (11th Cir. 2005).   A federal MDL Court overseeing one such pharmaceutical product liability litigation bluntly characterized such tactics as "a sham, at the unfair expense not only of [the diverse pharmaceutical company] but of the many individuals . . . that are being unfairly dragged into court simply to prevent the adjudication of lawsuits against [the pharmaceutical company], the real target, in a federal forum." *Anderson v. Am. Home Prods. Corp.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002).

In this case, Plaintiff's claims against the detailers are without any basis in fact.   It is axiomatic that, to make a *prima facie* case against the detailers, Plaintiff must show that they have some causal connection to her alleged injuries. *See, e.g., Havner v. E.Z. Mart Stores, Inc.*, 825 S.W.2d 456, 463 (Tex. 1992) (noting that "[o]ne of the essential elements of a negligence case is causation...."). But there is no such connection here. *The evidence establishes that none of the twenty-one named detailers ever called upon, detailed, visited with, or gave any information whatsoever about the drug Celebrex® (or any other drug) to Plaintiff's prescribing physician, Dr. Brooks.* They also never provided any information or made any statements about Celebrex® to Plaintiff, whom they do not know.   These individual defendants, therefore, could not have caused or contributed to Dr. Brooks' decision to prescribe the drug to Plaintiff, and none has a causal connection to Plaintiff's alleged injuries.[3]   Furthermore, and in any event, Plaintiff fails to state any viable claims against the detailers as a matter of Texas law.   The improper joinder of these individual Pfizer employees, thus, does not defeat diversity jurisdiction.

---

[3] Indeed, Plaintiff's counsel has named *the same twenty-one detailers* in at least eleven different cases filed all over the State of Texas – from Starr County in the south to this case filed in Tarrant County in the north – despite the fact that the named detailers never detailed the product in certain geographic areas, such as Tarrant County. *See generally* discussion, Part III.B, *infra*. The fact that Plaintiff's counsel in these cases have indiscriminately thrown the same Pfizer detailers into their lawsuits despite lacking any factual connection to their alleged injuries reflects their scattershot approach to attempting to defeat federal jurisdiction.

Likewise, Plaintiff's conclusionary allegations against Dr. Brooks do not provide any reasonable basis to predict that Plaintiff could establish a medical negligence claim against him under Texas law. Plaintiff does not allege a single case-specific fact that would supply a basis for recovery against Dr. Brooks. *See, e.g., Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1964-65 & n. 3 (May 21, 2007) (holding that under Rule 8 a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level"). When faced with similar circumstances, courts from around the country have found the non-diverse defendant to be improperly joined. *See, e.g., Heirs of the Estate of Pablo Flores v. Merck & Co., Inc.*, No. C-03-362, slip op. at 2-3 (S.D. Tex. Mar. 15, 2004) (App. at 305-306). This case is no different. Consequently, Dr. Brooks' citizenship also may be disregarded when determining removal jurisdiction.

In sum, this action is one in which this Court has original subject matter jurisdiction under the provisions of 28 U.S.C. § 1332, and is one which may be removed to this Court by Pfizer pursuant to the provisions of 28 U.S.C. § 1441(a), in that, excluding the improperly joined defendants, it is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Copies of all process, pleadings, and orders filed in state court are attached hereto.

## II.

### Diversity of Citizenship

Plaintiff Frances Carter is, and was at the time this suit was filed, a resident of Tarrant County and a citizen of the State of Texas, *see* PETITION at 2 (App. at 27), and, thus, she is a Texas citizen for purposes of determining federal diversity jurisdiction.

Defendant Pfizer Inc. was at the time this suit was filed, and is presently, a corporation organized under Delaware law with its principal place of business in New York. *See* PETITION at 2 (App. at 27). It therefore is considered a citizen of both Delaware and New York for jurisdictional purposes. *See* 28 U.S.C. § 1332(c)(1).

Defendant employee Kari A. McLuhan is, and was at the time this suit was filed, a resident and citizen of the State of Arizona. *See* MCLUHAN DECL. at ¶ 3 (App. at 124).

Defendant employee Jill Guidry is, and was at the time this suit was filed, a resident and citizen of the State of Louisiana.[4] *See* GUIDRY DECL. at ¶ 3 (App. at 156).

Defendant employees Jacqueline Guerrero, Bob Davis, Jeanne L. Jalufka, Kyle M. Nelson, Jason D. Hahn, Robert G. Vial, Kathryn K. Truitt, Reynaldo Riojas, Francisco Meza, Jack Barineau, Erica Zeplin, Deborah Quinones, W. Lance Goodson, Keely Rodriguez, Leah Silva, Daniel Ponce, Celeste Escobar, Daniel Townsend, and Lynsey Adame (collectively referred to as the "detailers") were at the time this suit was filed, and are presently, residents and citizens of the State of Texas. *See* PETITION at 2-4 (App. at 27-29). Plaintiff also avers that Dr. Clarence Brooks "may be served with process" at an address in Fort Worth, Texas. *Id.* at 4 (App. at 29). Assuming Dr. Brooks also shares Plaintiff's Texas citizenship, both he and the detailers are improperly joined in an attempt to prevent removal, and therefore, their citizenship may be disregarded for purposes of determining diversity jurisdiction. A non-diverse defendant is deemed to be improperly joined when there is no reasonable basis to predict that the plaintiff could establish a cause of action against that party in state court. *See Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). As discussed below, there is no reasonable basis to predict that Plaintiff could establish a claim against the in-state employee detailers or physician named as defendants in this case.

---

[4] In any event, Defendants McLuhan and Guidry are improperly joined and/or nominal parties for the same reasons discussed below with respect to the other detailers.

### III.

### The Detailer Defendants
### Are Improperly Joined

#### A.    The improper joinder standard.

The improper joinder doctrine prevents plaintiffs from defeating diversity jurisdiction simply by naming a defendant who shares a plaintiff's state citizenship. 28 U.S.C. § 1441(b) (providing for removal jurisdiction in diversity cases "if none of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought") (emphasis added); *see generally Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907) ("The Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right."); *Legg*, 428 F.3d at 1320 (recognizing "common strategy" in pharmaceutical product liability actions of naming non-diverse local defendants against whom there is no legitimate claim in an effort to defeat pharmaceutical company's removal rights); *see also McKinney v. Bd. Of Md. Cmty. College*, 955 F.2d 924, 928 (4th Cir. 1992) ("Congress created the removal process to protect defendants.  It did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.").

Improper joinder is established by, *inter alia*, the "'inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)); *accord Boone v Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005).  In other words, removal is appropriate and the citizenship of a non-diverse defendant is disregarded where "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.  The Fifth Circuit has emphasized that "[a] 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Id.* at 573 n.9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d

7

282, 286 n.4 (5th Cir. 2000)). There must be a *"reasonable* basis" for predicting that the plaintiff might establish the non-diverse defendant's liability on the pleaded claims to warrant remand. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (emphasis added).

Further, merely pleading a cause of action against a non-diverse defendant is insufficient to show that the plaintiff has a reasonable possibility of recovery against that party. The court is authorized to look beyond the pleadings and engage in a summary judgment-type inquiry to determine whether improper joinder exists. *Ross v. Citifinancial, Inc.*, 344 F.3d 458, 462-63 (5th Cir. 2003) ("For fraudulent joinder *vel non*, it is well established that the district court may 'pierce the pleadings' and consider summary judgment type evidence."); *Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 389-90 (5th Cir. 2000) (*"Badon I"*) ("[W]e have consistently recognized that diversity removal may be based on evidence outside the pleadings."); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 n.18 (5th Cir. 1995) (collecting cases that authorize court to look beyond pleadings); *Legg*, 428 F.3d at 1322-23 (holding that the district court committed legal error and abused its discretion in failing to consider undisputed affidavits submitted by detailers of defendant drug manufacturer in support of the removal of a product liability action).

**B.    The detailers are improperly joined because they have no connection to Plaintiff's having taken Celebrex® or her alleged injuries.**

The detailer defendants named in this case have no factual connection to Plaintiff's claims. All of Plaintiff's causes of action against them are predicated on allegations that they participated in disseminating false and misleading information regarding the safety and proper uses of Celebrex® to Dr. Clarence Brooks or to Plaintiff, thereby influencing Dr. Brooks' decision to prescribe the drug to Plaintiff and Plaintiff's decision to take the drug. *See, e.g.,* PETITION at 5-7 (App. at 30-32). The declarations of the named detailers, however, demonstrate that none of them ever detailed Celebrex® to, or even called upon, Dr. Brooks (or any other health care providers in Tarrant County). *See* GUERRERO DECL. at ¶ 7 (App. at 104); DAVIS

8

DECL. at ¶ 7 (App. at 107); JALUFKA DECL. at ¶ 8 (App. at 110); NELSON DECL. at ¶ 8 (App. at 113); HAHN DECL. at ¶ 8 (App. at 116); VIAL DECL. at ¶ 8 (App. at 119); TRUITT DECL. at ¶ 8 (App. at 122); McLUHAN DECL. at ¶ 9 (App. at 125); RIOJAS DECL. at ¶ 8 (App. at 128); MEZA DECL. at ¶¶ 5-6 (App. at 130-131); BARINEAU DECL. at ¶ 7 (App. at 133); ZEPLIN DECL. at ¶ 7 (App. at 136); QUINONES DECL. at ¶ 7 (App. at 139); GOODSON DECL. at ¶ 7 (App. at 142); RODRIGUEZ DECL. at ¶ 7 (App. at 145); SILVA DECL. at ¶ 7 (App. at 148); PONCE DECL. at ¶ 7 (App. at 151); ESCOBAR DECL. at ¶ 7 (App. at 154); GUIDRY DECL. at ¶ 9 (App. at 157); TOWNSEND DECL. at ¶ 7 (App. at 160); ADAME DECL. at ¶ 7 (App. at 163).[5]

Further, none of the detailers know Plaintiff Frances Carter or had contact with her regarding Celebrex®. *See* GUERRERO DECL. at ¶ 8 (App. at 104); DAVIS DECL. at ¶ 8 (App. at 107); JALUFKA DECL. at ¶ 9 (App. at 110); NELSON DECL. at ¶ 9 (App. at 113); HAHN DECL. at ¶ 9 (App. at 116); VIAL DECL. at ¶ 9 (App. at 119); TRUITT DECL. at ¶ 9 (App. at 122); McLUHAN DECL. at ¶ 10 (App. at 125); RIOJAS DECL. at ¶ 9 (App. at 128); MEZA DECL. at ¶ 7 (App. at 131); BARINEAU DECL. at ¶ 8 (App. at 133); ZEPLIN DECL. at ¶ 8 (App. at 136); QUINONES DECL. at ¶ 8 (App. at 139); GOODSON DECL. at ¶ 8 (App. at 142); RODRIGUEZ DECL. at ¶ 8 (App. at 145); SILVA DECL. at ¶ 8 (App. at 148); PONCE DECL. at ¶ 8 (App. at 151); ESCOBAR DECL. at ¶ 8 (App. at 154); GUIDRY DECL. at ¶ 10 (App. at 157); TOWNSEND DECL. at ¶ 8 (App. at 160); ADAME DECL. at ¶ 8 (App. at 163).

Because there is no causal connection between *any* of the named detailers and Plaintiff's alleged injuries, there is no reasonable basis to predict that Plaintiff could recover against them in state court. Thus, they have been improperly joined in this action. *See Legg*, 428 F.3d at 1322-23 (holding that the undisputed affidavits of the named detailers were sufficient to demonstrate that they were fraudulently joined) (citing *Badon I*); *see also Hawthorne Land Co. v. Occidental*

---

[5] Nor, as a general matter, did any of the named detailers sell, design, manufacture, or test Celebrex®. *See, e.g.,* GUERRERO DECL. ¶ 10.

*Chem. Corp.*, 431 F.3d 221, 225 (5th Cir. 2005) (concluding uncontradicted affidavit establishing that non-diverse employee defendants did not have connection to plaintiffs' alleged injuries demonstrated improper joinder).

Other federal courts consistently have denied remand in pharmaceutical products liability cases such as this one where the plaintiffs named non-diverse pharmaceutical representatives who had no connection to their injuries. For example, a number of Texas federal courts have held detailers improperly joined where a plaintiff was unable to demonstrate a connection between her alleged injuries and the named defendant, either because the detailer did not call on the plaintiff's physician or did not detail the drugs at issue. *See, e.g., Garcia v. Wyeth*, No. 03-2595, slip op. at 4 (S.D. Tex. Sept. 18, 2003) (holding detailers who did not detail diet drugs fraudulently joined where plaintiff submitted no evidence demonstrating connection to plaintiff) (App. at 307-312); *Thibodeaux v. Wyeth*, No. 03-2532, slip op. at 4 (S.D. Tex. Sept. 13, 2003) (same) (App. at 265); *Brooks v. Wyeth*, No. 03-2210, slip op. at 5 (S.D. Tex. Aug. 13, 2003) (same) (App. at 272); *Northcutt v. Wyeth*, No. 03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003) (same) (App. at 199); *Coleman v. Wyeth*, No. W-03-CA-201, slip op. at 3 (W.D. Tex. Sept. 12, 2003) (holding detailer fraudulently joined where plaintiff could not show that detailer had contact with plaintiff's physician) (App. at 277); *Holder v. Wyeth*, No. W-03-CA-205, slip op. at 3 (W.D. Tex. Sept. 10, 2003) (same) (App. at 283) (same). Other federal courts, including the federal MDL courts in both the diet drug and Rezulin® products liability litigations, have reached similar conclusions. *See, e.g., In re Diet Drugs Prods. Liab. Litig.*, No. 03-20611, 2004 WL 2203712, at *2 (E.D. Pa. Sept. 28, 2004); *In re Diet Drugs Prod. Liab. Litig.*, No. 03-20546, 2004 WL 1535828, at *11 (E.D. Pa. July 6, 2004); *Wakefield v. American Home Products Corp.*, No. 02-20164, slip op. at 11-12 (E.D. Pa. Dec. 17, 2002) (App. at 297-298); *Dacosta v. Novartis AG*, 180 F. Supp. 2d 1178, 1182-83 (D. Or. 2001); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp.

2d 272, 281, 286-87 (S.D.N.Y. 2001). The lack of any connection between Plaintiff's claims and the Texas detailers named in this case likewise establishes they are improperly joined.

      **C.**      **In any event, Plaintiff fails to state any viable claims against the twenty-one detailer defendants.**

               **1.**      ***Any product-liability or breach of warranty-type claims cannot establish liability on behalf of the employee detailers.***

Plaintiff's claims against the detailer employees also fail as a matter of Texas substantive law. For instance, Plaintiff alleges that the detailers are liable under strict product liability and breach of warranty theories. *See* PETITION at 8-11, 13-15. However, these theories do not state a valid claim because the detailers are not "sellers" of the product in question. Rather, the evidence establishes they simply are employees of the product's "seller" – which is Pfizer. *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20546, 2004 WL 1535828, *10 (E.D. Pa. July 6, 2004) ("While the product's 'seller' owes the consumer a duty to warn of a product's dangers, [the pharmaceutical manufacturer], and not the sales representatives, was the 'seller.'") (applying Texas law); *see also Gordon v. Pfizer Inc.*, No. CV-06-RRA-703-E, 2006 WL 2337002, at *7 (N.D. Ala. May 22, 2006) (holding that Pfizer's detailer's "affidavit constitutes affirmative proof . . . that he is not a 'seller' or 'manufacturer.' To the contrary, he is simply a 'detailer' on behalf of his employer, Pfizer" and therefore is fraudulently joined); *DaCosta v. Novartis AG*, No. CV-01-800-BR, 2002 WL 31957424, *8 (D. Or. Mar. 1, 2002) (holding pharmaceutical detailer "merely an employee" of pharmaceutical company and was not strictly liable for drugs he promoted); *McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158 (S.D. Miss. 1997) (holding there was no reasonable basis to predict state law would impose strict liability upon the employees of businesses who sell products to consumers; "Such employees are not 'in the business of selling products' but rather are employed by companies that are 'in the business of selling products for use or consumption.'") (quoting RESTATEMENT (SECOND) OF TORTS § 402(A) (1965)).

a.    **The detailer employees are not "sellers" of prescription drugs under Texas law.**

Only the "seller" of a product may be held strictly liable under Texas law for injuries caused to the end-consumer. *See, e.g., Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (explaining that only those engaged in the business of designing, manufacturing or selling a product, or otherwise introducing the product into the channels of commerce, are subject to strict products liability); *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375 (Tex. 1978) (same). Likewise, only the "seller" is liable under a breach of warranty theory. *See, e.g., Klo-Zik Co. v. General Motors Corp.*, 677 F. Supp. 499, 507–08 (E.D. Tex. 1987) ("It is apparent that S&S does not qualify as a seller with regard to the trucks and may not be held on an implied warranty theory in that respect."); *Arceneaux v. Lykes Bros. Steamship Co., Inc.*, 890 S.W.2d 191, 196 n. 2 (Tex. App.—Beaumont 1994, writ denied) ("With respect to liability for breach of implied warranties, the fact that the product designer was not a seller of the product *is* dispositive. Implied warranties are given only by the actual sellers of products, not by others who have played some other role in the distribution of the product.") (emphasis in original).

A "seller" is one who is engaged in the business of distributing or otherwise placing the product into the stream of commerce. TEX. CIV. PRAC. & REM. CODE § 82.001(3) (defining "seller"); *see also Barajas*, 927 S.W.2d at 613; *Urquidez*, 570 S.W.2d at 375. Thus, it is not enough that a party simply was a link in the chain of distribution that ultimately placed the product in the hands of a consumer. *See, e.g., Cobb v. Dallas Fort Worth Med. Center-Grand Prairie*, 48 S.W.3d 820, 826 (Tex. App.–Waco 2001, no pet.) (explaining that, for purposes of a strict liability claim, a hospital defendant was not "in the business" of selling transpedicular hardware used during surgical procedure; rather, product was connected with provision of medical services).

12

The evidence tendered with this removal establishes that the detailer defendants are not "sellers" of Celebrex®. The detailers are *employees* of the business (Pfizer) that allegedly distributed the product in question. *See, e.g.,* GUERRERO DECL. ¶ 3 (App. at 103). Their job simply was to "make the physician aware of certain of Pfizer's products. . . ." *Id.* They never personally sold the drug to health care professionals, pharmacies, or anyone else, and did not have any involvement in the design, manufacture, or testing of Celebrex®. GUERRERO DECL. at ¶ 10 (App. at 104); DAVIS DECL. at ¶ 10 (App. at 107); JALUFKA DECL. at ¶ 11 (App. at 110); NELSON DECL. at ¶ 11 (App. at 113); HAHN DECL. at ¶ 11 (App. at 116); VIAL DECL. at ¶ 11 (App. at 119); TRUITT DECL. at ¶ 11 (App. at 122); MCLUHAN DECL. at ¶ 12 (App. at 126); RIOJAS DECL. at ¶ 11 (App. at 128); MEZA DECL. at ¶ 5 (App. at 130); BARINEAU DECL. at ¶ 10 (App. at 133); ZEPLIN DECL. at ¶ 11 (App. at 136); QUINONES DECL. at ¶ 10 (App. at 139); GOODSON DECL. at ¶ 10 (App. at 142); RODRIGUEZ DECL. at ¶ 10 (App. at 145); SILVA DECL. at ¶ 10 (App. at 148); PONCE DECL. at ¶ 10 (App. at 151); ESCOBAR DECL. at ¶ 10 (App. at 154); GUIDRY DECL. at ¶ 12 (App. at 157); TOWNSEND DECL. at ¶ 10 (App. at 160); ADAME DECL. at ¶ 10 (App. at 163). Further, it was Pfizer – their employer – that provided *all* of the information and material the representatives used to "detail" Pfizer's drugs. *See, e.g.,* GUERRERO DECL. at ¶ 5.

In short, the detailers are in the business of providing services to, and are agents of, their employer, which, in turn, is in the business of putting particular products into the stream of commerce. *See, e.g., Gordon*, 2006 WL 2337002, at *7 (holding that Pfizer field representatives "are not considered to be sellers or suppliers of the prescription drugs they represent" but are "simply a 'detailer' on behalf of [their] employer."); *DaCosta*, 2002 WL 31957424, *8 (holding pharmaceutical detailer "merely an employee" of pharmaceutical company and was not strictly liable for drugs he promoted); *McCurtis*, 968 F. Supp. at 1160 (holding there was no reasonable

basis to predict state law would impose strict liability upon the employees of businesses who sell products to consumers; "Such employees are not 'in the business of selling products' but rather are employed by companies that are 'in the business of selling products for use or consumption.'") (quoting RESTATEMENT (SECOND) OF TORTS § 402(A) (1965)); *see also Crocker v. Winthrop Lab.*, 514 S.W.2d 429, 430, 433 (Tex. 1974) (holding pharmaceutical company liable under 402B misrepresentation theory as "seller" of prescription drug based on representations by its employee-agent drug sales representative). Even though the detailers' services might make information available to facilitate commercial distribution of Pfizer's products, they are not themselves subject to individual liability as the "seller" of their employer's prescription drugs.

Texas law is clear that service providers are not "sellers" under Texas law. *See, e.g., Ames v. Ford Motor Co.*, 299 F. Supp. 2d 678, 679 (S.D. Tex. 2003); *Loyd v. ECO Resources, Inc.*, 956 S.W.2d 110, 133 (Tex. App.–Houston [14th Dist.] 1997, no writ); *Neavauex v. Park Place Hospital, Inc.*, 656 S.W.2d 923, 926 (Tex. App.–Beaumont 1983, writ ref'd n.r.e.). Nor are entities that indirectly facilitate commercial distribution of a product, such as financing companies and financing "lessors," considered "sellers" under Texas law. *See, e.g., Cole v. Elliot Equip. Corp.*, 653 F.2d 1031, 1034-35 (5th Cir. 1981); *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 498 (Tex. App.–San Antonio 2004, pet. denied); *Wynn v. Kensington Mortgage and Fin. Corp.*, 697 S.W.2d 47, 50 (Tex. App.–Austin 1985, no writ). These principles of Texas law have equal applicability here, where the detailers supply only services to their employer – the product's distributor – that might facilitate the product's distribution on behalf of the employer. *See Barajas*, 927 S.W.2d at 616 ("Imposition of strict liability demands more than an incidental role in the overall marketing program of the product.").

Furthermore, the detailers have no ownership of or title to the drugs they promote, and Plaintiff does not allege otherwise. The medications for which the detailers provide information

are the company's, and it is the company that controls distribution into the stream of commerce. *Cf. FFE Transp. Serv. v. Fulgham*, 154 S.W.3d 84, 89 (Tex. 2004) (explaining that in providing refrigerated trailer to its contractor, company conferred "*only possession of the trailer, not a right of control*," and while in possession of the trailer, contractor "acted solely as [company's] agent to accomplish its business purpose.") (emphasis added); *Loyd*, 956 S.W.2d at 130 (stating that, under Texas law, "[t]he right of control is an important factor in determining the existence of a legal duty, and it is often the deciding factor.").

The Third Restatement makes the point more directly: "Persons assisting or providing services to product distributors, while indirectly facilitating commercial distribution of products, are not subject to liability under the rules of this Restatement." RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 20 cmt. g (1998) (emphasis added). In particular, "[s]ales personnel" are excluded from the class of those who "sell[] or otherwise distribute[]" a product, and are not subject to strict products liability. *Id.*; *see also* AM. L. PROD. LIAB. 3D § 5.45 (1987) ("[T]he 'sellers' [for purposes of strict liability] are the businesses, not employees who act solely as agents for their principals."). Although the Texas Supreme Court has not yet had occasion specifically to address section 20 or comment g, its rationale is consistent with Texas law, as discussed above. Moreover, as the Fifth Circuit has noted, "[t]he Texas Supreme Court has long looked to the Restatement of Torts as an influential guide in products liability law, and has recently heavily relied on the refinements in such law reflected in Restatement Third, Torts: Products Liability." *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 334 (5th Cir. 1998) (citing *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788-89 (Tex. 1967); *Caterpillar Inc. v. Shears*, 911 S.W.2d 379, 381-83 (Tex. 1995); *Barajas*, 927 S.W.2d at 613, 616).[6]

---

[6] Since the publication of the Third Restatement, various Texas courts, including the Texas Supreme Court, have cited various provisions of the Third Restatement as authoritative. *See, e.g., Humble Sand & Gravel, Inc. v. Gomez*, 146 S.W.3d 170, 172 n.1, 2, 3, 183 n.23, 183 n.28, 185 n.41, 189 n.47, 191 n.52

For all of these reasons, Pfizer – and not any individual detailer employee – is deemed the "seller" of the drug. Because the detailers are not considered "sellers" of the prescription pharmaceutical product at issue, they are not liable to Plaintiff under Texas product liability or breach of warranty laws. Indeed, to hold otherwise, and subject the individual employees to liability under such theories, would run contrary to the well-established notion that an agent is not subject to liability for torts committed by the agent's principal – "there is no principle of 'respondeat inferior.'" RESTATEMENT (THIRD) OF AGENCY § 7.01 cmt. d (2006); *see also Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (explaining "'individual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty.'") (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)). Consequently, there is no reasonable possibility Plaintiff could recover against the detailers under these theories in state court.

      **b.**    **Even assuming the detailers could be considered "non-manufacturing sellers," the evidence establishes they are not liable to Plaintiff.**

Even assuming *arguendo* that the detailers could be deemed "non-manufacturing sellers" under Texas law (and they cannot for the reasons stated above), as of 2003, Texas eliminated liability for "downstream" sellers who sold a product alleged to be defectively designed or manufactured by another except in very limited circumstances, none of which are applicable here. Section 82.003(a) of the Texas Civil Practice and Remedies Code, as amended, now states:

    (a)    A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:

        (1)    that the seller participated in the design of the product;

---

(Tex. 2004) (citing §§ 2, 2 cmt. i, j; 6 cmt. B; 2(c)); *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 683 (Tex. 2004) (citing § 5); *Hernandez v. Tokai Corp.*, 2 S.W.3d 251, 257 n.9 (Tex. 1999) (citing § 2(b)); *Gen. Motors Corp. v. Sanchez*, 997 S.W.2d 584, 592 n.26 (Tex. 1999) (citing § 2 cmt. f); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 666-67 n.23 (Tex. 1999) (citing § 2 cmt. n); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex. 1998) (citing § 2(b)).

(2)     that the seller altered or modified the product and the claimant's harm resulted from the alteration or modification;

(3)     that the seller installed the product, or had the product installed on another product and the claimant's harm resulted from the product's installation onto the assembled product;

(4)     that:

   (A)     the seller exercised substantial control over the content of a warning or instruction that accompanied the product;

   (B)     the warning or instruction was inadequate; and

   (C)     the claimant's harm resulted from the inadequacy of the warning or instruction;

(5)     that:

   (A)     the seller made an express factual representation about an aspect of the product;

   (B)     the representation was incorrect;

   (C)     the claimant relied on the representation in obtaining or using the product; and

   (D)     if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered the same degree of harm;

(6)     that:

   (A)     the seller actually knew of a defect to the product at the time the seller supplied the product; and

   (B)     the claimant's harm resulted from the defect; or

(7)     that the manufacturer of the product is:

   (A)     insolvent; or

   (B)     not subject to the jurisdiction of the court.

TEX. CIV. PRAC. & REM. CODE ANN. § 82.003 (Vernon 2005). Plaintiff does not allege that the detailers could be held liable under subsections (2), (3), or (7) of the statute. Further, Pfizer's evidence establishes that none of the other four possible exceptions – subsections (1), (4), (5), and (6) – apply here. The detailers had no involvement in the design of Bextra® (as required by (1)); no control over content of the package inserts or other written warnings (as required by (4)); made no representations about Bextra® to Plaintiff or her physician (as required by (5)); and had no knowledge that the product was defective and did not "supply" the product to Plaintiff (as required by (6)). *See* GUERRERO DECL. at ¶¶ 5, 7-10 (App. at 103-104); DAVIS DECL. at ¶¶ 5, 7-10 (App. at 106-107); JALUFKA DECL. at ¶¶ 6, 8-11 (App. at 110); NELSON DECL. at ¶¶ 6, 8-11 (App. at 113); HAHN DECL. at ¶¶ 6, 8-11 (App. at 116); VIAL DECL. at ¶¶ 6, 8-11 (App. at 119);

TRUITT DECL. at ¶¶ 6, 8-11 (App. at 122); MCLUHAN DECL. at ¶¶ 7, 9-12 (App. at 125-126); RIOJAS DECL. at ¶¶ 6, 8-11 (App. at 127-128); MEZA DECL. at ¶¶ 5-7 (App. at 130-131); BARINEAU DECL. at ¶¶ 5, 7-10 (App. at 132-133); ZEPLIN DECL. at ¶¶ 5, 7-10 (App. at 135-136); QUINONES DECL. at ¶¶ 5, 7-10 (App. at 138-139); GOODSON DECL. at ¶¶ 5, 7-10 (App. at 141-142); RODRIGUEZ DECL. at ¶¶ 5, 7-10 (App. at 144-145); SILVA DECL. at ¶¶ 5, 7-10 (App. at 147-148); PONCE DECL. at ¶¶ 5, 7-10 (App. at 150-151); ESCOBAR DECL. at ¶¶ 5, 7-10 (App. at 153-154); GUIDRY DECL. at ¶¶ 7, 9-12 (App. at 157); TOWNSEND DECL. at ¶¶ 5, 7-10 (App. at 159-160); ADAME DECL. at ¶¶ 5, 7-10 (App. at 162-163). Thus, again, there is no reasonable possibility Plaintiff could establish a claim against them in state court. *See, e.g., Garcia v. Nissan Mtr. Co., Ltd.*, No. M-05-59, 2006 WL 869944, *4 (S.D. Tex. Mar. 30, 2006) (holding that undisputed declaration from non-diverse defendant establishing it lacked knowledge of defect that potentially could make it liable under § 83.002(a)(6) demonstrated improper joinder).

### 2.    *Plaintiff's failure-to-warn and misrepresentation-type claims also do not state cognizable claims against the detailers under Texas law.*

Although vaguely drafted, the gist of Plaintiff's complaint against the detailers appears to be that they passed along – and did not correct – allegedly incorrect information provided by Pfizer regarding the safety and risk profile of Celebrex® to health care providers. *See, e.g.,* PETITION 7 (stating that detailer defendants "called on doctors and hospitals" regarding Celebrex® and "were in a position to make representations about the risks" associated with use of that drug). These allegations fail to state viable claims under Texas law because they are based on the mistaken premise that the Pfizer representatives *individually* owed physicians (and patients) a duty to warn about risks of taking Celebrex®. It is Pfizer – the seller of Celebrex® – that owed a duty to warn prescribing physicians of known or foreseeable side effects associated

with that drug.[7]  Pfizer contends that it fulfilled this duty, but even if it did not, the detailer employees are not personally liable for Pfizer's failure to warn.  Employees do not assume individual, personal liability in the absence of an independent duty merely by participating in their employer's alleged failure to provide adequate information about its products. "'[I]ndividual liability arises only when the officer or agent owes an independent duty of reasonable care to the injured party apart from the employer's duty,'" *Tri v. J.T.T.*, 162 S.W.3d 552, 562 (Tex. 2005) (quoting *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996)), or when the agent knowingly participates in fraudulent or tortious conduct.  *See Kingston v. Helm*, 82 S.W.3d 755, 759 (Tex. App.—Corpus Christi 2002, pet. denied).

The duty to warn is owed by the product's "seller."  *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 305 (Tex. App. – Houston [1st Dist.] 1999, pet. denied).  As discussed above, however, the detailers are not "sellers" of Celebrex® under Texas law, and owe no independent duty to warn apart from that owed by their employer.  *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20546, 2004 WL 1535828, *10 (E.D. Pa. July 6, 2004) ("While the product's 'seller' owes the consumer a duty to warn of a product's dangers, [the pharmaceutical manufacturer], and not the sales representatives, was the 'seller.' . . . .  Accordingly, the sales representatives owed no independent duty to warn under Texas law."); *see also, e.g., In re Diet Drugs Prods. Liab. Litig.*, 220 F. Supp. 2d 414, 425 (E.D. Pa. 2002) ("[S]ales representatives are not considered 'sellers' under Mississippi law, but rather, employees of the businesses who are sellers.").

---

[7]    The learned intermediary doctrine establishes that Pfizer's duty is to communicate appropriate warnings to the prescribing physician; Pfizer had no duty to warn patients directly.  *See, e.g., Wyeth-Ayerst Labs. Co. v. Medrano*, 28 S.W.3d 87, 91 (Tex. App. – Texarkana 2000, no pet.).  Although Pfizer contends the detailer defendants owed no duty to warn, even if they did owe such a duty, the learned intermediary doctrine would apply to them as well.  *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 288-90 (S.D.N.Y. 2001)  (extending learned intermediary doctrine to detailers under Mississippi law); *Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 524-25 (S.D. Miss. 2000) (same).

Indeed, pharmaceutical detailers cannot possibly owe an individual duty to warn. They have no control over the content of the FDA-approved (and FDA-mandated) package insert or other written warnings supplied to health care providers by Pfizer. *See, e.g.,* GUERRERO DECL. at ¶ 5 (App. at 103). Even assuming, *arguendo*, that a detailer could be responsible for giving oral warnings, this would require unfettered, personal access to physicians, which detailers lack – some physicians refuse to meet with detailers at all; others meet with them for less than ten minutes. *Id.* at ¶ 3. Imposing on detailers an individual duty to warn would require them to spend their brief visits – assuming they even got one – reiterating every known side effect contained in the product's FDA-approved labeling in order to avoid practically unlimited personal liability. Moreover, it makes no sense to make a non-physician detailer personally liable for failing to give oral warnings to a medically-trained professional about a prescription drug that is exhaustively described in FDA-approved prescribing information in an FDA-approved format. For the reasons discussed above, Texas law does not require this absurd result.

Numerous Texas federal courts have held that prescription drug users have no reasonable possibility of establishing the personal liability of individual detailers based on these theories and have found that they are improperly joined in an action against their employer, the manufacturer. Even prior to the creation of MDL-1699, the late Judge Howell Cobb issued four different orders in the Celebrex®/Bextra® litigation finding improper joinder in cases removed to the Eastern District of Texas based on virtually identical allegations. *See Hebert v. Pfizer Inc.*, No. 1:05-CV-418-HC, slip op. at 1-2 (E.D. Tex. Aug. 18, 2005) (App. at 168-169); *Pickens v. Pfizer Inc.*, No. 1:05-CV-528-HC, slip op. at 1-2 (E.D. Tex. Aug. 18, 2005) (App. at 171-172); *Knight v. Pfizer Inc.*, No. 1:05-CV-529-HC, slip op. at 1-2 (E.D. Tex. Aug. 17, 2005) (App. at 174-175); *Boudreaux v. Pfizer Inc.*, No. 1:05-CV-369-HC, slip op. at 1-2 (E.D. Tex. July 17, 2005) (App. at 176-177).

Other Texas federal courts also have found that no viable claim existed against individual detailers when faced with substantially similar issues of improper joinder. *See, e.g., Budd v. Wyeth*, Case No. A-03-CA-465-SS, slip op. at 6 (W.D. Tex. Sept. 17, 2003) (Sparks, J.) ("[B]ecause the detailers do not have duty to research and ensure the safety [sic] fen-phen separate from Wyeth's duty, [plaintiff] does not have a reasonable possibility of success on her misrepresentation claims against the detailers under Texas law.") (App. at 183); *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7 (N.D. Tex. Feb. 17, 2004) (Cummings, J.) (concluding that, under Texas law, plaintiff had "no reasonable possibility of success on any claims for negligence on the part of [Wyeth's] sales representatives.") (App. at 192); *Northcutt v. Wyeth*, No. H-03-2665, slip op. at 5 (S.D. Tex. Aug. 13, 2003) (Rosenthal, J.) ("There is no allegation nor presentation of any facts that would create an independent duty owing from these individual employees to Northcutt, apart from the duty owing by Wyeth, that was violated.") (App. at 199); *Nightingale v. Wyeth*, No. W-03-CA-203 (W.D. Tex. Sept. 5, 2003) (Smith, Jr., J.) ("Plaintiffs have identified no duty under Texas law which either Defendant owed to Plaintiffs or violated.") (App. at 203-205); *Ferguson v. Wyeth*, No. 4:03-CV-5141 (S.D. Tex. Jan. 30, 2004) (Hoyt, J.) ("The Court is of the opinion that these sales representatives cannot warrant or make representations about pharmaceutical products that would override the disclosure that is required of and made by the manufacturer of the drugs.") (App. at 206). The detailer employees named in this case likewise are improperly joined.

Any negligent misrepresentation claim fails for an additional reason. To recover for negligent misrepresentation, a plaintiff actually must have received and relied upon the alleged misrepresentation. *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 396 (Tex. App. – Amarillo 2000, no pet.). The detailers' declarations confirm they did not make any

representations regarding Celebrex® directly to Plaintiff.[8]  Nor, as discussed above, did they make any representations to the prescribing doctor that the doctor could have passed along to her.   But Plaintiff could not recover from the detailers as an "indirect recipient" of a misrepresentation in any event.  Texas has adopted Section 552 of the Restatement (Second) of Torts, which limits liability for negligent misrepresentation to "the person or one of a limited group of persons for whose benefit and guidance [the defendant] intends to supply the information or knows that the recipient intends to supply it[.]"  RESTATEMENT (SECOND) OF TORTS § 552(2)(a) (1977); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (adopting Section 552).  As interpreted by Texas courts, "the Restatement requires actual knowledge of the recipient's identity and a specific intent on the part of the alleged tortfeasor that the claimant would rely on the misrepresentation." *Trans-Gulf Corp. v. Performance Aircraft Servs., Inc.*, 82 S.W.3d 691, 696 (Tex. App.–Eastland 2002, no pet.).  Even a claim for fraud requires that the defendant intend that the plaintiff receive and rely upon the allegedly false communication.  *Great Plains Trust Co.*, 313 F.3d at 322.  Plaintiff has not alleged (and cannot seriously contend) that the detailers were aware of her specific identity, much less that they made representations to her physician with the specific intent that they be repeated to, and relied upon, by her.

---

[8] *See* GUERRERO DECL. at ¶ 8 (App. at 104); DAVIS DECL. at ¶ 8 (App. at 107); JALUFKA DECL. at ¶ 9 (App. at 110); NELSON DECL. at ¶ 9 (App. at 113); HAHN DECL. at ¶ 9 (App. at 116); VIAL DECL. at ¶ 9 (App. at 119); TRUITT DECL. at ¶ 9 (App. at 122); MCLUHAN DECL. at ¶ 10 (App. at 125); RIOJAS DECL. at ¶ 9 (App. at 128); MEZA DECL. at ¶ 7 (App. at 131);  BARINEAU DECL. at ¶ 8 (App. at 133);  ZEPLIN DECL. at ¶ 8 (App. at 136); QUINONES DECL. at ¶ 8 (App. at 139); GOODSON DECL. at ¶ 8 (App. at 142); RODRIGUEZ DECL. at ¶ 8 (App. at 145); SILVA DECL. at ¶ 8 (App. at 148); PONCE DECL. at ¶ 8 (App. at 151); ESCOBAR DECL. at ¶ 8 (App. at 154); GUIDRY DECL. at ¶ 10 (App. at 157);  TOWNSEND DECL. at ¶ 8 (App. at 160); ADAME DECL. at ¶ 8 (App. at 163).

**3.      Any allegation of "knowing" misrepresentation or fraud against the local defendants also is rebutted by the detailers' sworn declarations.**

The non-diverse representatives who detailed Celebrex® also are improperly joined because any allegation of "knowing" misconduct – and there is none – is rebutted by Pfizer's proof.  The detailers' sworn declarations are clear that they "never intentionally misrepresented the safety, efficacy, or risk profile of Celebrex® to any health care provider or patient" and "never knowingly made a false or misleading statement about Celebrex® to any health care provider or Celebrex® user."[9]  *See* GUERRERO DECL. at ¶ 12 (App. at 105); DAVIS DECL. at ¶ 12 (App. at 108); JALUFKA DECL. at ¶ 13 (App. at 111); NELSON DECL. at ¶ 13 (App. at 114); HAHN DECL. at ¶ 12 (App. at 117); VIAL DECL. at ¶ 12 (App. at 120); TRUITT DECL. at ¶ 12 (App. at 123); MCLUHAN DECL. at ¶ 14 (App. at 126);  RIOJAS DECL. at ¶ 13 (App. at 129); BARINEAU DECL. at ¶ 12 (App. at 134);  ZEPLIN DECL. at ¶ 11 (App. at 136); QUINONES DECL. at ¶ 12 (App. at 140); GOODSON DECL. at ¶ 11 (App. at 142); RODRIGUEZ DECL. at ¶ 12 (App. at 145); SILVA DECL. at ¶ 12 (App. at 149); PONCE DECL. at ¶ 12 (App. at 152); ESCOBAR DECL. at ¶ 12 (App. at 155); GUIDRY DECL. at ¶ 14 (App. at 158);  TOWNSEND DECL. at ¶ 12 (App. at 161); ADAME DECL. at ¶ 12 (App. at 164).  Indeed, all of the information and material the individual employees used to detail Pfizer's drugs was derived exclusively from the education provided to them by Pfizer.  *See, e.g.,* GUERRERO DECL. at ¶ 5.  They did not, as field representatives, conduct independent research regarding the drugs they detailed.  *Id.* at ¶ 6.  They have no knowledge that any of the information provided to them by Pfizer about Celebrex® is incorrect.  *Id.* at ¶ 9.

The detailers' declarations negate any allegation that they knowingly participated in any tortious conduct.  When presented with similar proof, Texas federal courts have held that it established that the individual pharmaceutical representatives were improperly joined.  *See, e.g.,*

---

[9] One of the detailers named by Plaintiff never marketed, distributed, sold, or promoted Celebrex®.  *See* MEZA DECL. ¶ 5 (App. at 130).  That defendant never called on a single physician or health care provider regarding that drug.  *Id.*

*Kollman v. Wyeth*, No. A-04-CA-034-SS, slip op. at 6-8 (W.D. Tex. Mar. 15, 2004) (holding non-diverse detailer defendant fraudulently joined where removing defendant had negated the facts that might form the basis for a state law claim against the detailer) (App. at 212-215); *Lewis v. Wyeth*, No. 1:03-CV-166-C, slip op. at 7-8 (N.D. Tex. Feb. 17, 2004) (holding that plaintiff's fraud and misrepresentation claims were rebutted by declarations from non-diverse detailers and that those defendants were fraudulently joined) (App. at 192-193); *Nightingale v. Wyeth, Inc.*, No. W-03-CA-203, slip op. at 3 (W.D. Tex. Sept. 5, 2003) (holding non-diverse detailer defendants fraudulently joined where plaintiffs had not presented anything to refute those defendants' sworn testimony that no misrepresentations were made regarding the uses of the drugs in question) (App. at 205). Other federal courts have agreed. *See, e.g., Legg v. Wyeth*, 428 F.3d 1317, 1323-24 (11th Cir. 2005) (concluding that there was no reasonable possibility of recovery against nondiverse detailer where detailer had submitted sworn statement refuting plaintiff's claims and plaintiff had not provided any contrary evidence); *McCluskey v. Merck & Co., Inc.*, No. 07-AR-0232-S, slip op. at 11-13 (N.D. Ala. Mar. 7, 2007) (holding allegations of fraud and fraudulent misrepresentation rebutted by Pfizer detailers' uncontested declarations) (App. at 230-232); *Gordon*, 2006 WL 233702, at *7 (same); *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20765, 2004 WL 1824357, *4 (E.D. Pa. Aug. 12, 2004) (holding that allegations of knowing participation in fraudulent or tortious conduct were rebutted by non-diverse detailer defendants' sworn testimony); *Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRD (M.D. Fla. May 17, 2004) (magistrate's report and recommendation), *adopted by Sobkowski v. Wyeth*, No. 5:04-CV-96-Oc-10GRJ (M.D. Fla. June 24, 2004) (holding that plaintiff's fraud claim against non-diverse detailers did not defeat removal where allegations of fraud were rebutted by uncontested affidavits of detailers) (App. at 235-261).

**IV.**

**The Physician Defendant
Also Is Improperly Joined**

Defendant Clarence Brooks, M.D. also is improperly joined. There is no reasonable basis to predict that Plaintiff could recover against him under state law. Plaintiff's state-court petition fails to adequately allege any cognizable cause of action against Dr. Brooks, and is completely devoid of any case-specific factual allegations which could form the basis for an actionable claim against him. The in-state physician defendant has been named and retained in this suit solely to defeat federal diversity jurisdiction. Accordingly, his citizenship may be disregarded and removal is proper.

**A.      Plaintiff's Petition Does Not State An Actionable Claim Against Dr. Brooks.**

      **1.      *The Plaintiff's Allegations***

"[P]leadings matter when fraudulent joinder . . . issues are decided." *Great Plains Trust Co. v. Morgan Stanley Dean Whitter & Co.*, 313 F.3d 305, 328 (5th Cir. 2002). Whether removal to federal court is appropriate is determined "on the basis of claims in the state court complaint as it exists at the time of removal." *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). In this case, the petition on file at the time of removal is devoted to allegations of wrongdoing *by Pfizer*. Plaintiff provides detailed allegations meant to support her claim against Pfizer for strict liability, negligence, breach of warranty, and fraud. *See generally* PETITION at 5-18. These claims cite specific acts and omissions allegedly committed by Pfizer, including that Pfizer actively suppressed information about the alleged harmful effects of Celebrex®:

> Defendant Pfizer . . . purposefully minimized and understated health hazards and risks associated with Celebrex®. Defendant Pfizer . . ., through literature and oral statements, deceived potential users of Celebrex® *and their physicians* by relaying positive information, including testimonials from satisfied



users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug.

* * *

The known danger that Defendant Pfizer's product Celebrex® causes increased risk of cardiovascular events was never indicated in any manner by Defendants.

* * *

Prior to the date upon which Celebrex® was prescribed to Frances Carter, Defendants knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public. The dangers of this product included, by way of example, increased risk of cardiovascular events, including, but not limited to, myocardial infarction, strokes and other injuries. Defendants failed to take appropriate action to cure the nature of these defects or warn users of the product *or their physicians* of such dangerous characteristics.

*See id.* at 6-7 (emphasis added). Plaintiff further alleges that the product was defective because Pfizer "failed to provide adequate warnings to users, consumers *or prescribers* of the product, including Frances Carter, *and her prescribing physicians. . .,*" *id.* at 10-11, and that Pfizer "conceal[ed]" material facts, including "that use [of Celebrex®] could cause injuries, including, but not limited to, increased risk of fatal and non-fatal cardiovascular events, including, but not limited to heart attacks and strokes." *Id.* at 17.

In sharp contrast to the specifics alleged regarding Pfizer's conduct, Dr. Brooks is hardly mentioned among the nineteen pages of Plaintiff's petition. Plaintiff merely contends Dr. Brooks prescribed her Celebrex®. *Id.* at 7. She then alleges, without citing any specific factual support and after explicitly asserting that Pfizer *concealed* Celebrex®'s adverse health effects from the health care community in general and Dr. Brooks in particular, that Dr. Brooks "should have been aware of the dangers posed by Celebrex®, despite Defendant Pfizer's misrepresentations and concealment because of various publications printed in reliable, peer-reviewed medical journals prior to the date of Plaintiff's injuries." *Id.* at 12. She further states, in conclusionary fashion, that Dr. Brooks was negligent inasmuch as he "fail[ed] to provide

adequate medical evaluation and monitoring; and by failing to adequately warn Plaintiff of the nature, dangers, hazards, side effects and counter-indications of Celebrex." *Id.* As discussed below, these sorts of conclusory allegations against a non-diverse defendant are insufficient to divest a federal court of diversity jurisdiction.

### 2.    *Plaintiff Does Not State Any Cognizable Claim Against Dr. Brooks.*

Plaintiff's vague and conclusory allegations of negligence against Dr. Brooks, without any attempt to plead actionable facts specific to him, does not undermine federal diversity jurisdiction. "[P]leadings matter when fraudulent joinder . . . issues are decided." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 328 (5th Cir. 2002). Indeed, the United States Supreme Court recently emphasized that ordinary pleading rules "require[] a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1965 n.3 (May 21, 2007) (addressing FED. R. CIV. P. 8). Thus, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65.

In keeping with these principles, "[c]onclusory allegations, wholly lacking in specific factual support" are insufficient to defeat an improper joinder removal. *Jernigan v. Ashland Oil Co.*, 989 F.2d 812, 817 (5th Cir. 1993). "Failure to specify a factual basis for recovery against a non-diverse party constitutes a failure to state a claim and fraudulent joinder of that party." *Waters v. State Farm Mut. Auto. Ins. Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994) (citing *Doe v. Cloverleaf Mall*, 829 F. Supp. 866, 870 (S.D. Miss. 1993)); *see also Kyger v. Veravest Investments, Inc.*, No. 4:04-CV-94-A, 2004 WL 1043111, *2 (N.D. Tex. May 6, 2004)

("Speculative and conclusory allegations do not state a cause of action without factual support. Fraudulent joinder will be found where a plaintiff has failed to plead any specific acts of negligence against the non-diverse defendant.") (citations omitted); *Staples v. Merck & Co.*, 270 F. Supp. 2d 833, 837 (N.D. Tex. 2003) ("[W]hen plaintiffs make general allegations and fail to support them with specific, underlying facts, they have not established a reasonable basis for the Court to predict that relief may be granted.") (citation omitted); *Cantrell v. Wyeth*, No. 3:03-CV-1659-G, 2003 WL 22251079, at *4 (N.D. Tex. Sept. 19, 2003) (concluding that plaintiff's failure "to provide any factual basis to support" her "conclusory" allegations that physician fraudulently concealed dangers of prescribed drugs warranted finding of improper joinder); *Hernandez Castellanos v. Bridgestone Corp.*, 215 F. Supp. 2d 862, 864-65 (S.D. Tex. 2002) (concluding that terse, conclusory allegation of negligence against non-diverse defendant without any supporting factual allegations did not defeat removal); *Addison v. Allstate Ins. Co.*, 58 F. Supp. 2d 729, 732-33 (S.D. Miss. 1999) (concluding non-diverse defendant was fraudulently joined where plaintiff failed to allege any factual basis for claim of liability); *McIntire v. Rollins, Inc.*, 888 F. Supp. 68, 69 (S.D. Tex. 1995) ("Where no specific acts of negligence are pled against the individual defendant, this Court has consistently held that the individual has been fraudulently joined, and has dismissed the individual.").

As noted above, while Plaintiff's petition makes a number of specific allegations regarding *Pfizer's* alleged misconduct in marketing and distributing Celebrex®, *see, e.g.*, PETITION at 5-7, it does not recite *any* case-specific facts supporting a claim against *Dr. Brooks* beyond alleging that he prescribed the drug in question. For example, the petition does not identify when Plaintiff allegedly ingested Celebrex®, when Dr. Brooks is alleged to have prescribed the drug in question or for how long, why the drug was allegedly not indicated for Plaintiff or was otherwise prescribed improperly, or what warnings were in effect at the time Dr.

Brooks purportedly issued the prescription. Nor does Plaintiff identify the circumstances surrounding her alleged treatment by Dr. Brooks, or the information allegedly exchanged between Plaintiff and Dr. Brooks concerning Plaintiff's medical treatment or the alleged risks of Celebrex®. In short, the petition does not cite *a single case-specific fact* suggesting any reasonable basis to predict that Plaintiff could establish liability on a malpractice claim against her prescribing physician. Absent some case-specific basis to conclude that a legitimate medical negligence case exists, there is no reasonable foundation to predict that Plaintiff could establish a cause of action against Dr. Brooks.

Further, Plaintiff here pleads facts that affirmatively would negate any potential failure-to-warn claim against the doctor. "'[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' allegations and the pleaded theory of recovery.'" *Ghoman v. New Hampshire Ins. Co.*, No. 3:01-CV-092-BD(L), 2001 WL 376460, at *2 (N.D. Tex. Apr. 11, 2001) (quoting *Griggs*, 181 F.3d at 701). No such "factual fit" exists between the factual allegations asserted in this case and a medical negligence theory of recovery. In particular, the petition repeatedly and specifically makes allegations that Pfizer went to great lengths *to conceal and/or misrepresent the risks of its drug. See, e.g.,* PETITION at 6 ("Defendant Pfizer . . ., through literature and oral statements, deceived potential users of Celebrex® *and their physicians* by relaying positive information, including testimonials from satisfied users, and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug.") (emphasis added); *id.* at 7 ("The dangers of this product included, by way of example, increased risk of cardiovascular events, including, but not limited to, myocardial infarction, strokes and other injuries. Defendants failed to take appropriate action to cure the nature of these defects or warn users of the product *or their physicians* of such dangerous characteristics.") (emphasis added); *id.* at 17

(alleging Pfizer "conceal[ed]" material facts, including "that use [of Celebrex®] could cause injuries, including, but not limited to, increased risk of fatal and non-fatal cardiovascular events, including, but not limited to heart attacks and strokes."). Although Texas law requires a plaintiff to prove that a physician knew or should have known of a drug's adverse side-effects to establish a medical malpractice claim based on the prescription of the drug, *see, e.g., Gatling v. Perna*, 788 S.W.2d 44, 47 (Tex. App.–Dallas 1990, writ denied), Plaintiff pleads no specific facts to suggest that Dr. Brooks knew or should have known of the risks purportedly concealed by the manufacturer.[10]

There simply is no basis for imputing to Dr. Brooks the knowledge of Celebrex®'s allegedly adverse risks when, according to Plaintiff's pleaded allegations, Pfizer actively *concealed* those risks from everyone, including the healthcare community. Federal MDL courts in other pharmaceutical products liability litigations have refused to remand cases involving nebulous allegations of medical negligence against an in-state physician in circumstances such as these. For example, in denying remand in a Baycol® case, the MDL court noted the specific allegations included in the plaintiff's complaint that the manufacturers of Baycol® misrepresented the safety of its drug and failed to warn of the medication's risks. *See In re Baycol Prods. Liab. Litig.*, No. 02-4835, 2003 WL 21223842, at *1 (D. Minn. May 27, 2003).

---

[10] While Texas law permits a plaintiff to plead "alternative" or "inconsistent" theories of recovery in their petition, *see, e.g., Jones v. American Home Prods. Corp.*, 344 F. Supp. 2d 500, 505 (E.D. Tex. 2004) (stating that "a plaintiff may set out theories in the alternatives."); *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31852826, at *2 ("The fact that plaintiffs' pleadings may be inconsistent is not fatal."), this case does not present "inconsistent theories." In this action, Plaintiff does not articulate a viable alternative theory of recovery against Dr. Brooks. The substantive factual allegations asserted in Plaintiff's petition are that Pfizer withheld, concealed, and/or misrepresented the true risks of Celebrex®, without pleading any specific factual basis to conclude that Dr. Brooks knew or should have known of those same risks. Thus, Plaintiff has not pled "inconsistent" facts, but rather *consistent* facts that are irreconcilable with a medical negligence theory against Dr. Brooks. *See, e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (court will not accept as true conclusory allegations or unwarranted deductions of fact). In such circumstances, federal jurisdiction is appropriate. *See, e.g., Jones*, 344 F. Supp. 2d at 505; *In re Rezulin Prods. Liab. Litig.*, 2002 WL 31852826, *2.

The court agreed that, in the face of these allegations, the conclusory negligence claim against the prescribing doctor did not warrant remand:

> Reading the Complaint as a whole, it is clear that the main thrust of this action is that the Baycol Defendants misrepresented Baycol's risks and failed to adequately warn of such risks. Plaintiff has not included any factual assertions in her complaint to support the conclusory allegation that Dr. Stone "knew or should have known" of Baycol's risks. Her conclusory allegations, however, will not defeat a finding of fraudulent joinder. . . . Based on the allegations contained in the Complaint, the Court finds that there is no reasonable basis in fact and law supporting a claim against Dr. Stone.

*Id.* at *2 (internal citations omitted). Likewise, the Rezulin® MDL court reached the same conclusion in substantially identical circumstances. *See In re Rezulin Prods. Liab. Litig.*, No. 00-CV-2843, 2002 WL 31852826, at *2 (S.D.N.Y. Dec. 18, 2002) ("[T]he main tenor of plaintiffs' complaints is that Rezulin was an unsafe drug and that the manufacturers concealed its risks from the public, physicians, and others. In this context, an entirely conclusory allegations that the [non-diverse] physicians failed to warn of the risks of Rezulin is insufficient [to warrant remand]."); *accord In re Rezulin Prods. Liab. Litig.*, No. 00-CV-2843, 2003 WL 43356, at *1 (S.D.N.Y. Jan. 6, 2003) (same).

The "main thrust" of the current petition is no different. Plaintiff repeatedly and specifically alleges that Pfizer concealed and misrepresented the risks of taking Celebrex®. In contrast, she does not allege *any* specific factual basis aside from unspecified medical articles to conclude that Dr. Brooks knew or should have known of the health risks identified in the complaint, or suggest any other foundation for finding that he improperly prescribed the drugs in question. In similar circumstances, a number of federal courts (including several Texas federal courts) have concluded that removal was appropriate and that the non-diverse defendant was improperly joined. *See, e.g., Jones v. American Home Prods. Corp.*, 344 F. Supp. 2d 500, 505 (E.D. Tex. 2004) (explaining that physician defendant was improperly joined because there was no "possibility of recovery under Texas law against the Healthcare Defendants for failure to

warn about problems which were deliberately concealed by the Manufacturer Defendants.");
*Heirs of the Estate of Pablo Flores v. Merck & Co., Inc.*, No. C-03-362, slip op. at 2 (S.D. Tex.
Mar. 15, 2004) (holding conclusory negligence claims against in-state prescribing physician did
not defeat improper joinder removal where plaintiff specifically claimed dangers of drug were
concealed by manufacturer) (App. at 305); *Chiles v. American Home Prods. Corp.*, No. 4:03-
CV-802-A, slip op. (N.D. Tex. Sept. 26, 2003) (denying remand based on presence of local
physician defendant in part because allegations that manufacturing defendants deliberately or
negligently deceived everyone else – including doctors – regarding safety of their products
precluded claim of negligence by health care defendants) (App. at 330-335); *Whatley v. Nastech
Pharmaceutical Co., Inc.*, No. 1:03-CV-162-GR, slip op. at 3-5 (S.D. Miss. June 24, 2003)
(holding vague allegations of medical negligence against non-diverse prescribing doctor
insufficient to defeat removal) (App. at 315-317); *Louis v. Wyeth-Ayerst Pharm.*, No. 5:00-CV-
102-LN, slip op. at 3-9 (S.D. Miss. Sept. 25, 2000) (concluding non-diverse pharmacist
fraudulently joined where, given allegations against manufacturer, there was no reasonable basis
to support claim he knew or should have known of dangers of prescription medication) (App. at
322-328); *Strickland v. Brown Morris Pharmacy, Inc.*, No. 96-815, 1996 WL 537736, *2 (E.D.
La. Sept. 20, 1996) (concluding that dispensing pharmacy was fraudulently joined where "no
facts have been avowed which would go to show that [the pharmacy] knew or should have
known that Primatine Mist was an unsafe product in its normal and intended use."). The same
conclusion should obtain here. Dr. Brooks is improperly joined.

### V.

### Amount in Controversy

The amount-in-controversy requirement of 28 U.S.C. § 1332(a) is plainly satisfied.
Plaintiff alleges that, as a result of ingesting Celebrex®, she sustained serious and permanent

injuries. PETITION at 1. She is seeking unlimited compensatory damages for, *inter alia*, physical pain and mental anguish, medical expenses, economic damages, and loss of enjoyment of life. *Id.* at 18-19. She also seeks unlimited punitive damages for Pfizer's alleged "gross negligence." *Id.* It is facially apparent from the petition that Plaintiff seeks recovery of an amount in excess of $75,000, exclusive of interest and costs. *See, e.g., De Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir. 1993) (stating that where it is "facially apparent" from the state-court petition that the amount in controversy exceeds the jurisdictional minimum, then the defendant need only point such fact out to successfully bear its burden ); *see also Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (concluding that district court did not err in finding that personal injury claims exceeded $75,000 where the claimant alleged "damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework after the hospitalization."); *Morrow v. Wyeth*, No. B-05-209, 2005 WL 2621555, *3 (S.D. Tex. Oct. 13, 2005) (unpublished) (concluding that amount-in-controversy was satisfied in pharmaceutical product liability case where plaintiff alleged "severe injuries," including "serious injuries to his central nervous system"); *Matney v. Wenger Corp.*, 957 F. Supp. 942, 943 (S.D. Tex. 1997) (holding that a products liability complaint asserting claims for personal injury, past and future medical expenses, mental anguish, and exemplary damages met the amount-in-controversy threshold).

## VI.

### Consent to Removal

The detailer and physician defendants are improperly joined in an attempt to defeat diversity and prevent removal. Consequently, their consent is not required for removal. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993); *Farias v. Bexar Co. Bd. of Trustees*, 925 F.2d 866, 871 (5th Cir. 1991). In any event, those defendants who have been

served at the time of removal (Defendant Goodson) consents to removal of this cause to this Court. *See Nixon v. Wheatley*, 368 F. Supp. 2d 635, 639 (E.D. Tex. 2005) (holding that statement in notice of removal that defendants, who were represented by the same counsel, joined the removal was sufficient to satisfy unanimity requirement). The consent of the unserved defendants is not required. *Getty Oil Corp. v. Ins. Co. of North Am.*, 841 F.2d 1254, 1262 n.9 (5th Cir. 1988).

## VII.

### Removal is Timely

Pfizer is the only properly joined defendant in this case, and all other defendants, as discussed above, are improperly joined. Pfizer was first served with citation on May 7, 2007, less than 30 days before its Notice of Removal is being filed. Accordingly, this removal is timely. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347–48 (1999).

## VIII.

### Proper Court for Removal

The United States District Court for the Northern District of Texas, Fort Worth Division, embraces Tarrant County, the county in which the state court action is now pending. *See* 28 U.S.C. § 124(a)(2). Thus, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441(a).

## IX.

### Conclusion

Upon filing of this Notice of the removal of this cause, written notice of the filing is being given by Defendant to Plaintiff and counsel, and is being filed with the Clerk of the state

court in which this cause was originally filed, as required by 28 U.S.C. § 1446(d). A copy of

those notices with proof of service of them is attached hereto at App. 70-75.

WHEREFORE, Defendant Pfizer hereby removes the above-styled action pending

against it in the 153rd Judicial District Court of Tarrant County, Texas, to this Honorable Court.

Respectfully submitted,

_____ *

Kenneth J. Ferguson
Attorney-in-charge
State Bar No. 06918100
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]
E-mail: kjf@ctw.com

*signed with permission by Leslie A. Benitez

**OF COUNSEL:**
Leslie A. Benitez
State Bar No. 02134300
E-mail: lab@ctw.com
Kelly R. Kimbrough
State Bar No. 00794984
E-mail: krk@ctw.com
J. Andrew Hutton
State Bar No. 24012878
E-mail: ah1@ctw.com
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas  78767
(512) 472-8800
(512) 474-1129 [Fax]

*Local Counsel Designated Pursuant to Local Rule 83.10:*
Dimple Desai Shah
State Bar No. 24012523
5216 Westshire Lane
Dallas, Texas 75287
(972) 735-8181 (Telephone)
(972) 735-8181 (Facsimile)
Email: dhd@ctw.com

**ATTORNEYS FOR DEFENDANTS**
**PFIZER INC. AND W. LANCE GOODSON**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was forwarded in the manner described below to the following interested parties on June 1, 2007.

**<u>*Via Certified Mail/Return Receipt Requested*</u>**

Kathryn Snapka
Greg W. Turman
Richard B. Waterhouse, Jr.
Aditi Anita Shahani
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78476
***Attorneys for Plaintiff***

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

See Attached. 2007 JUN -5 AM 10: 13

## DEFENDANTS

See Attached.

4-07CV-335-A

(b) County of Residence of First Listed Plaintiff **Tarrant County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

See Attached

Attorneys (If Known)

See Attached.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

X 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | X 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | X 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | X 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding

X 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332 (Diversity of citizenship between citizens of different states where amount in controversy exceeds $75,000)
Brief description of cause:
Product liability/Personal Injury action involving prescription drug Celebrex®

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
June 1, 2007

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # **FW003415** AMOUNT **360** APPLYING IFP JUDGE **A** MAG. JUDGE

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

© Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment).

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example:     U.S. Civil Statute: 47 USC 553
              Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

## LIST OF PARTIES AND ATTORNEYS

**I. (a) Plaintiff**

Frances Carter

**Defendants**

Pfizer Inc. [incorrectly named as "Pfizer, Inc."]
Jacqueline Guerrero
Bob Davis
Jeanne Jalufka
Kyle M. Nelson
Jason D. Hahn
Robert G. Vial
Kathryn K. Truitt
Kari A. McLuhan
Reynaldo Riojas
Francisco Meza
Jack Barineau
Erica Zeplin
Deborah Quinones
W. Lance Goodson
Keely Rodriguez
Leah Silva
Daniel Ponce
Celeste Escobar
Jill Guidry
Daniel Townsend
Lynsey Adame
Clarence Brooks, M.D.

**I. (c) LIST OF ATTORNEYS**

**ATTORNEYS FOR PLAINTIFF**
Kathryn Snapka
State Bar No. 18781200
Greg W. Turman
State Bar No. 00785123
Rick B. Waterhouse, Jr.
State Bar No. 00788624
Aditi Anita Shahani
State Bar No. 24041898
SNAPKA, TURMAN & WATERHOUSE, L.L.P.
P.O. Drawer 23017
606 N. Carancahua, Suite 1511
Corpus Christi, Texas 78403
(361) 888-7676
(361) 884-8545 (Fax)

**ATTORNEYS FOR DEFENDANTS PFIZER INC. AND W. LANCE GOODSON**

Kenneth J. Ferguson
Attorney-in-Charge
State Bar No. 06918100
Leslie A. Benitez
State Bar No. 02134300
Kelly R. Kimbrough
State Bar No. 00794984
J. Andrew Hutton
State Bar No. 24012878
CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION
P.O. Box 1148
Austin, Texas 78767
(512) 472-8800
(512) 474-1129 (Fax)

*Local Counsel Designated Pursuant to Local Rule 83.10*:
Dimple Desai Shah
State Bar No. 24012523
5216 Westshire Lane
Dallas, Texas 75287
(972) 735-8181
(972) 735-8181 (Fax)

**ATTORNEYS FOR ALL OTHER DEFENDANTS**

Unknown at this time

Original Document

# United States District Court
## Northern District of Texas

## Supplemental Civil Cover Sheet For Cases Removed
## From State Court

**This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S. District Clerk's Office.  Additional sheets may be used as necessary.**

1.    **State Court Information:**

Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

|     **Court**     |     **Case Number**     |
|---|---|
| 153rd Judicial District Court of Tarrant County, Texas | Cause No. 153-223442-07 |

153rd Judicial District Court of Tarrant County, Texas — Cause No. 153-223442-07

2.    **Style of the Case:**

Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code.)

| **Party and Party Type** | **Attorney(s)** |
|---|---|
| **Plaintiff** | **Counsel** |
| Frances Carter | Kathryn Snapka<br>State Bar No. 18781200<br>Greg W. Turman<br>State Bar No. 00785123<br>Rick Waterhouse<br>State Bar No. 00788624<br>Aditi Anita Shahani<br>State Bar No. 24041898<br>SNAPKA, TURMAN & WATERHOUSE, L.L.P.<br>P.O. Drawer 23017<br>606 N. Carancahua, Suite 1511<br>Corpus Christi, Texas 78403<br>(361) 888-7676<br>(361) 884-8545 (Fax) |

**Supplemental Cover Sheet**
**Page 2**

| Defendants | Counsel |
|---|---|
| Pfizer Inc.<br>W. Lance Goodson | Kenneth J. Ferguson<br>Attorney-in-Charge<br>Leslie A. Benitez<br>State Bar No. 02134300<br>Kelly R. Kimbrough<br>State Bar No. 00794984<br>J. Andrew Hutton<br>State Bar No. 24012878<br>CLARK, THOMAS & WINTERS<br>A PROFESSIONAL CORPORATION<br>P.O. Box 1148<br>Austin, Texas 78767<br>(512) 472-8800<br>(512) 474-1129 (Fax)<br><br>*Local Counsel Designated Pursuant to*<br>*Local Rule 83.10*:<br>Dimple Desai Shah<br>State Bar No. 24012523<br>5216 Westshire Lane<br>Dallas, Texas 75287<br>(972) 735-8181<br>(512) 589-5848 (Cell Phone)<br>(972) 735-8181 (Fax) |

**Supplemental Cover Sheet**
**Page 3**

| Defendants | Counsel |
|---|---|
| Jacqueline Guerrero<br>Bob Davis<br>Jeanne L. Jalufka<br>Kyle M. Nelson<br>Jason D. Hahn<br>Robert G. Vial<br>Kathryn K. Truitt<br>Kari A. McLuhan<br>Reynaldo Riojas<br>Francisco Meza<br>Jack Barineau<br>Erica Zeplin<br>Deborah Quinones<br>Keely Rodriguez<br>Leah Silva<br>Daniel Ponce<br>Celeste Escobar<br>Jill Guidry<br>Daniel Townsend<br>Lynsey Adame<br>Clarence Brooks, M.D. | Unknown at this time |

3.     **Jury Demand:**

Was a Jury Demand made in State Court?          ☒ Yes ☐ No

If "*Yes*," by which party and on what date?

(1) Plaintiff Frances Carter                        April 9, 2007

(2) Defendant Pfizer Inc.                           May 25, 2007

(3) Defendant W. Lance Goodson                      May 31, 2007

4.     **Answer:**

Was an Answer made in State Court?          ☒ Yes ☐ No

If "*Yes*," by which party and on what date?

(1) Defendant Pfizer Inc.                           May 25, 2007

(2) Defendant W. Lance Goodson                      May 31, 2007

**Supplemental Cover Sheet**
**Page 4**

5.     **Unserved Parties:**

The following parties have not been served at the time this case was removed:

| Party | Reason(s) for No Service |
|-------|--------------------------|
| Jacqueline Guerrero | Unknown at this time |
| Bob Davis | Unknown at this time |
| Jeanne L. Jalufka | Unknown at this time |
| Kyle M. Nelson | Unknown at this time |
| Jason D. Hahn | Unknown at this time |
| Robert G. Vial | Unknown at this time |
| Kathryn K. Truitt | Unknown at this time |
| Kari A. McLuhan | Unknown at this time |
| Reynaldo Riojas | Unknown at this time |
| Francisco Meza | Unknown at this time |
| Jack Barineau | Unknown at this time |
| Erica Zeplin | Unknown at this time |
| Deborah Quinones | Unknown at this time |
| Keely Rodriguez | Unknown at this time |
| Leah Silva | Unknown at this time |
| Daniel Ponce | Unknown at this time |
| Celeste Escobar | Unknown at this time |
| Jill Guidry | Unknown at this time |
| Daniel Townsend | Unknown at this time |
| Lynsey Adame | Unknown at this time |
| Clarence Brooks, M.D. | Unknown at this time |

6.     **Nonsuited, Dismissed or Terminated Parties:**

Please indicate any changes from the style on the State Court papers and the reason for that change:

| Party | Reason |
|-------|--------|

None

**Supplemental Cover Sheet**
**Page 5**

7.     **Claims of the Parties:**

The filing party submits the following summary of the remaining claims of each party in this litigation:

| <u>Party</u> | <u>Claim(s)</u> |
|---|---|
| Plaintiff Frances Carter | Strict Products Liability: Failure to Warn;  Strict Products Liability: Defective Product; Negligence; Breach of Implied Warranty; Breach of Express Warranty; Fraud; Fraud by Concealment |